# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Plowman*, 2018 IL App (4th) 170665

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF LARRY A. PLOWMAN, Petitioner-Appellant, and CARA R. LAWSON, Respondent-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-17-0665 |
| Filed | June 19, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 13-D-15; the Hon. Charles H.W. Burch, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Saleem B. Mamdani, of Lewis & Longlett, LLC, of Quincy, for appellant.<br><br>Betsy A. Wirth, of Stange Law Firm, PC, of Springfield, for appellee. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Justices Holder White and Steigmann concurred in the judgment and opinion. |

¶ 1        Petitioner, Larry A. Plowman, appeals from the trial court's order setting child support, which considered a personal injury settlement of respondent, Cara R. Lawson, as income only to the extent it was attributable to lost earnings. On appeal, Larry argues we should reverse the trial court's order and remand for the trial court to consider the entirety of the net proceeds from Cara's personal injury settlement as income for child support purposes. We reverse and remand.

¶ 2                              I. BACKGROUND

¶ 3        In April 2005, Larry and Cara received a judgment of dissolution in Texas. As part of that judgment, Cara was awarded the majority of parenting time of the parties' minor child, C.L. (born Oct. 24, 2004), and Larry was ordered to pay child support. Thereafter, Cara and C.L. moved to Illinois, and Larry moved to Nebraska.

¶ 4        In January 2013, Larry filed petitions to (1) enroll the judgment of dissolution in Illinois and (2) modify parenting time and allow C.L.'s removal to Nebraska. In February 2013, the trial court enrolled the judgment of dissolution and ordered mediation. Following mediation, the court entered an agreed order, granting Larry the majority of parenting time and allowing him leave to remove C.L. to Nebraska. As part of that order, the parties agreed to reserve the issue of child support because Cara was a full-time student.

¶ 5        In March 2015, Larry filed a petition to set child support, as Cara was no longer believed to be a full-time student. During the course of discovery, Larry received information suggesting Cara had recently received a personal injury settlement.

¶ 6        In June 2016, the trial court held a hearing on Larry's petition to set child support. In part, Cara testified she received a personal injury settlement after a car accident that resulted in her sustaining four broken ribs, a broken left wrist, and injuries to her leg requiring seven stitches. After deducting attorney fees and other expenses, Cara received a net amount of $158, 972.77. That money, Cara testified, was for her pain and suffering and not loss of income. When asked for her basis for concluding the money related to only pain and suffering, Cara testified:

>    "Because I—it took a long time for my wrist to heal. I'm a massage therapist. I couldn't work. I couldn't do anything. I couldn't drive a whole lot, you know. I was on pain medication."

Cara testified she used the money from the settlement to purchase a house, purchase a vehicle for herself, purchase a vehicle for an ex-boyfriend, and pay debt and various legal expenses, including fees for mediation and the services of a guardian *ad litem*. Cara testified she also used the money to purchase clothing and other items for C.L. when he visited. At the time of the hearing, the money from the personal injury settlement was depleted.

¶ 7        Larry requested that the trial court consider the entirety of the net proceeds from Cara's personal injury settlement as income for the purpose of setting child support. Larry acknowledged the Second District's decision in *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 150-51, 668 N.E.2d 589, 592-93 (1996), which found only the amount of a personal injury settlement attributable to lost earnings is income for child support purposes, but argued our supreme court's subsequent decision in *In re Marriage of Rogers*, 213 Ill. 2d 129, 136, 820 N.E.2d 386, 390 (2004), set forth an expansive definition of income, which would include the

entirety of the net proceeds from a personal injury settlement as those proceeds amount to a gain to the recipient. In support of his argument, Larry relied on the Fifth District's recent decision in *In re Marriage of Fortner*, 2016 IL App (5th) 150246, ¶ 26, 52 N.E.3d 682, which, in the context of a claim to set child support based on an award from a wrongful death action, found *Villanueva* was wrongly decided. Larry further asserted the evidence demonstrated Cara used the money from her settlement as if it was income.

¶ 8       Cara requested the trial court not consider any part of her personal injury settlement as income for the purpose of setting child support. Cara suggested the court should follow *Villanueva* and find compensation for pain and suffering should not be considered as income because it is intended to compensate the injured party. Cara acknowledged *Villanueva* required any portion of a personal injury award attributable to lost earnings be considered income for child support purposes but argued none of her settlement was in fact attributable to lost earnings.

¶ 9       In response to Cara's argument suggesting none of her personal injury settlement was attributable to lost earnings, Larry argued, even if the trial court followed *Villanueva*, Cara's testimony demonstrated her recovery was based in part on her inability to work as a massage therapist.

¶ 10      After considering the evidence and arguments presented, the trial court declined to consider any portion of Cara's personal injury settlement as income for the purpose of setting child support. The court rejected Larry's argument suggesting the entirety of the net proceeds of a personal injury settlement was income for child support purposes, finding *Villanueva*, the only authority specifically addressing personal injury settlements, prescribed only those damages attributable to lost earnings is income for child support purposes. The court also rejected Larry's alternative argument that it should consider the portion of Cara's personal injury settlement attributable to lost earnings as income, finding, based on the evidence presented, it was unable to determine how much of the settlement was in fact attributed to lost earnings. In rejecting Larry's alternative argument, the court further declined Larry's request to allow him to conduct further discovery on the breakdown of Cara's personal injury settlement. After rejecting Larry's arguments, the court set temporary child support and continued the matter to set permanent child support. In July 2016, the court entered a written order providing its findings.

¶ 11      In August 2016, Larry filed a motion requesting the trial court to reconsider its decisions concerning Cara's personal injury settlement. Larry argued that the court erroneously relied on *Villanueva*, in light of the decisions in *Rogers* and *Fortner*, to conclude the entirety of the net proceeds from a personal injury settlement was not income for child support purposes. Alternatively, Larry argued, the court should have allowed him additional time to conduct discovery on the issue of whether any amount of Cara's personal injury settlement was attributable to lost earnings. That same month, Cara filed a response to Larry's motion to reconsider, maintaining the court's prior decisions were correct.

¶ 12      In December 2016, the trial court held a continued hearing on Larry's petition to set child support, at which it also addressed Larry's motion to reconsider. Based on the evidence of Cara's recent employment, the court set permanent child support and an arrearage. As to the motion to reconsider, the court denied Larry's request for it to consider the entirety of the net proceeds from a personal injury settlement as income for child support purposes. However, it granted Larry's request to reopen discovery and allow another hearing on the issue of whether

any amount of Cara's settlement was attributable to lost earnings and should be considered income for child support purposes.

¶ 13 In August 2017, the trial court held a hearing to determine what portion, if any, of Cara's personal injury settlement was attributable to lost earnings. Based on the evidence presented, the court concluded $2430 of the settlement was attributable to lost earnings and, therefore, was income for child support purposes. The court ordered Cara to pay 20% of the $2430 as part of her child support arrearage.

¶ 14 This appeal followed.

¶ 15                                                    II. ANALYSIS

¶ 16 On appeal, Larry argues we should reverse the trial court's order setting child support and remand for the trial court to consider the entirety of the net proceeds from Cara's personal injury settlement as income for child support purposes. Larry acknowledges the Second District's 1996 decision in *Villanueva* found only the portion of a personal injury award attributable to lost earnings is income for child support purposes but asks this court, in our *de novo* review, to part ways with the Second District's holding because the net proceeds from a personal injury settlement amounts to a benefit or gain received by a noncustodial parent that enhances his or her wealth.

¶ 17 In response, Cara contends the trial court's decision to consider only the portion of her personal injury settlement attributable to lost earnings as income for child support purposes was a decision within the court's discretion, which this court should not disturb absent a finding of an abuse of that discretion. That is, Cara suggests the decision of whether to include any portion of a personal injury award as income for child support purposes should be made on a case-by-case basis. Cara further suggests, based on the severity of her injuries, that the trial court's decision does not amount to an abuse of its discretion.

¶ 18 A key purpose of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/101 to 802 (West 2014)) is to "mak[e] reasonable provision[s] for *** minor children." (Internal quotation marks omitted.) *In re Marriage of Brand*, 123 Ill. App. 3d 1047, 1052, 463 N.E.2d 1037, 1040 (1984); see also *In re Marriage of Klomps*, 286 Ill. App. 3d 710, 714, 676 N.E.2d 686, 689 (1997); *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 280, 860 N.E.2d 539, 548 (2006); *Fortner*, 2016 IL App (5th) 150246, ¶ 17.

¶ 19 Section 505(a) of the Dissolution Act (750 ILCS 5/505(a) (West Supp. 2015)) grants a trial court the authority to order either or both parents to pay "an amount reasonable and necessary for the support of the child." See also Pub. Act 99-764 (eff. July 1, 2017) (amending 750 ILCS 5/505 to make Illinois an income shares model). To calculate the appropriate amount of child support, "[t]he trial court must determine the parties' income, then apportion that income, setting an amount of child support for the noncustodial parent." *In re Marriage of Mayfield*, 2013 IL 114655, ¶ 16, 989 N.E.2d 601.

¶ 20 This appeal involves the first step in calculating an appropriate amount for child support—determining income. Section 505(a)(3) of the Dissolution Act (750 ILCS 5/505(a)(3) (West Supp. 2015)) broadly defines "[n]et income" as the "total of all income from all sources," minus various deductions. See also Pub. Act 99-764 (eff. July 1, 2017) (defining "gross income" as "the total of all income from all sources," minus various exceptions, and defining "net income" as "gross income minus either the standardized tax amount *** or the

- 4 -

individualized tax amount \*\*\*, and minus any [additional statutory] adjustments"). The Dissolution Act does not define "income," which has required our courts to do so.

¶ 21 For child support purposes, our supreme court has broadly defined "income" to include "gains and benefits that enhance a noncustodial parent's wealth and facilitate that parent's ability to support a child or children." *Mayfield*, 2013 IL 114655, ¶ 16 (citing *Rogers*, 213 Ill. 2d at 136-37). It has also noted "[s]uch gains and benefits are normally linked to employment or self-employment, investments, royalties, and gifts." *Mayfield*, 2013 IL 114655, ¶ 16. Our courts have found the definition of income to be broad enough to include lump-sum workers' compensation awards, individual retirement account distributions, military allowances, pensions, investment income and earnings from bonds and securities, severance pay, deferred compensation payments, distributions from a trust, and gifts from parents. See *Fortner*, 2016 IL App (5th) 150246, ¶ 18 (cases listed therein).

¶ 22 Whether a payment or award to a noncustodial parent falls within the definition of income is a question of law, subject to *de novo* review. *In re Marriage of McGrath*, 2012 IL 112792, ¶ 10, 970 N.E.2d 12; *In re Marriage of Marsh*, 2013 IL App (2d) 130423, ¶ 9, 3 N.E.3d 389; *Fortner*, 2016 IL App (5th) 150246, ¶ 16.

¶ 23 In *Villanueva*, 282 Ill. App. 3d at 150-51, the Second District rejected a trial court's conclusion the entirety of a personal injury award, less attorney fees and costs of suit, was income for child support purposes. In reaching that decision, the Second District began by defining "income" based on its ordinary meaning, stating income included "a gain or profit [citation] and is ordinarily understood to be a return on the investment of labor or capital, thereby increasing the wealth of the recipient [citations]." (Internal quotation marks omitted.) *Id.* at 150. The court then reviewed the purpose of a personal injury award, stating "it is clear that personal injury awards serve to make an injured party whole, in effect restoring one to the status quo before the injury was suffered." *Id.* After considering the ordinary meaning of the definition of income and the purpose of personal injury awards, the court held only the portion of a personal injury award attributable to lost earnings was income for child support purposes. *Id.* at 151. Damages for disability and disfigurement, pain and suffering, and medical expenses and care were not considered by the court to be income for child support purposes. *Id.*

¶ 24 Recently, the Fifth District addressed the Second District's decision in *Villanueva* in the context of whether settlement proceeds from a wrongful death settlement were income for child support purposes. In *Fortner*, 2016 IL App (5th) 150246, ¶ 11, the trial court found proceeds from a wrongful death settlement were not income for child support purposes. On appeal, the noncustodial parent who received the settlement maintained the trial court's finding was correct under *Villanueva* because the "damages for his grief and for the loss of his father's society [were] similar to damages for pain and suffering." *Id.* ¶ 24. The Fifth District rejected the noncustodial parent's argument, concluding *Villanueva* was "wrongly decided." *Id.* Specifically, it found (1) *Villanueva* was "at odds with the principle that the broad and expansive statutory definition of child support includes all benefits and gains received by a supporting parent unless such gains are excluded by statute" and (2) the out-of-state case law cited in *Villanueva* did not support its holding. *Id.* ¶¶ 26-32. The Fifth District held damages awarded for pain and suffering, disability, and emotional grief and loss were income for child support purposes as they amounted to a gain that facilitated a parent's ability to support his or her child. *Id.* ¶ 32.

¶ 25 It is undisputed that any portion of a personal injury award used to pay attorney fees, costs of suit, and previously incurred medical expenses and care is not income for child support purposes. In this case, after deducting attorney fees and other previously incurred expenses, Cara received a net amount of $158,972.77. It is undisputed that $2430 of this amount was for damages for lost wages, which the trial court properly considered as income for child support purposes. The remaining $156,542.77 ostensibly relate to damages for future medical expenses and care, pain and suffering, and disability. Larry conceded at oral argument that any damages for future medical expenses and care do not constitute income for child support purposes. Larry maintains, however, any damages awarded for pain and suffering and disability is income for child support purposes.

¶ 26 As Larry argues, we find the determination of whether certain payments or awards are income for child support purposes requires a consideration of the effect those payments or awards have on the receiving party. The court in *Villanueva* failed to consider the effect damages awarded for pain and suffering and disability had on the receiving party. We find these damages amount to a financial benefit to the receiving parent that has a positive impact on the parent's ability to support his or her children. We hold the net proceeds from a personal injury settlement attributable to damages for pain and suffering and disability is income for child support purposes.

¶ 27 Our holding strikes the balance between assuring reasonable provisions are provided for children and the realities of the personal and financial costs associated with those injuries for which a personal injury award is intended to compensate. In effect, our holding places the child and the noncustodial parent in the position they would have been had the child lived with the noncustodial parent.

¶ 28 In so holding, we also point out the Dissolution Act allows a trial court to deviate from the guidelines for setting the minimum amount of child support if it believes deviation is required after considering the best interests of the child in light of the evidence presented on various other factors. See 750 ILCS 5/505(a)(1), (a)(2) (West Supp. 2015); Pub. Act 99-764 (eff. July 1, 2017). For instance, a parent who has already received and spent a personal injury award may seek a deviation from the statutory child support guidelines if he or she is able to show the award was used in a way benefiting the child. In determining whether a deviation is warranted, the trial court may exercise its discretion on a case-by-case basis.

¶ 29 We reverse the trial court's order and remand for a new hearing on Larry's petition to set child support, at which the parties can present evidence and argument as to the portion of the net proceeds from Cara's personal injury settlement attributable to future medical expenses and care, pain and suffering, and disability. On remand, the trial court should apply the Dissolution Act as amended.

¶ 30                                             III. CONCLUSION

¶ 31 We reverse and remand for further proceedings.

¶ 32 Reversed and remanded.